IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 05-22592-CIV-COOKE

SAMUEL BUDDIE DAVIS,
SONIA DAVIS, and SASHA DAVIS,
    *Plaintiffs*,

v.

LANE MANAGEMENT, LLC
d/b/a LANE COMPANY and
SDW REALTY LLC AND
EMERALD-NILE REALTY, LLC.

    *Defendants*,
_____/

## DEFAULT FINAL JUDGEMENT

On October 10, 2007, I held a hearing on Plaintiffs' Motion for Default Final Judgment and find it meritorious for the reasons stated below.

Defendant SDW Realty, LLC ("SDW") jointly owns the apartment complex at issue. As the other defendants have declared bankruptcy and settled, SDW remains the sole defendant in this case.

On May 11, 2007, I found that SDW was an unrepresented corporation in violation of my Order to attend mediation. [DE 27]. I directed SDW to show good cause why I should not enter default and levy sanctions against it. [DE 42]. *See Pallazzo v. Gulf Oil Corp.*, 764 F.2d 1381 (11th Cir. 1985) (holding that a corporate entity must be represented by licensed counsel). SDW ignored my Order, so I entered default on May 29th, 2007. Nonetheless, I decided to give SDW one last chance and set the case for a default judgment hearing on October 10, 2007. SDW did not appear despite being duly noticed. Plaintiff Samuel Buddy Davis ("Plaintiff"), on the other hand, did attend with his family and attorney to put on record the tragedy he and his family had

endured at the hands of his landlords, including SDW.

Plaintiff is a 59-year-old quadriplegic who uses a motorized wheelchair. He lives with his wife and daughter at on the second story of SDW's Nile Garden Apartments in Opa-Locka, Florida. The building has two elevators that, for Plaintiff, serve as the only reasonable gateway between his second-story apartment and the outside world. The apartment-complex management was well aware of this fact from the start of Plaintiff's tenancy, at which time the elevators did work.

In January 2005, however, both elevators began experiencing problems, operating only sporadically. At the first sign of trouble, Plaintiff notified building management. But nothing was done. Soon, both elevators broke down completely, leaving Plaintiff stranded in his own home. He pleaded repeatedly with the management to fix the problem, but his pleas fell on deaf ears. Management found the repairs unnecessary and cost-prohibitive. Instead management representative, Heather, promised Plaintiff that there would be someone to assist him in getting up and down the stairs. She never made good on her promise. So as it were, the structure for which Plaintiff paid rent became almost his virtual prison.

For at least seven months, everyday Plaintiff had to crawl and drag his hips up and down the dirty concrete stairs filthied by spit, urine, and dog feces tracked in by people's shoes. Plaintiff's wife and daughter tried to help him, but sometimes, when they were unavailable, he had to drag himself. During this morning crawl, other tenants would rush by him, either pushing him aside or stepping over him. Upon finally reaching the street, Plaintiff's hands and clothes would be covered with filth; he had no choice but to attend class regularly in that soiled condition. Plaintiff was often seen sleeping at school or on the bus because getting to his own

bed required the humiliating and painful crawl up the dirty stairs.  As a result, his classmates refused to even look at him, assuming he was homeless on account of his soiled appearance.  At times, he ended up defecating and urinating on himself because he could not crawl back up to his apartment fast enough.  Plaintiff was made to endure this humiliation in front of his wife, daughter, neighbors, and friends.  To top it all off, the Nile Gardens Staff was often callous and rude, even laughing at Plaintiff's misfortune.

The building manager did, on one limited occasion, personally assist Plaintiff up the steps, but only to remark, "Man I don't know how y'all do this everyday because my whole body is painful."  Plaintiff's wife and daughter, however, would perform this task almost daily—helping Plaintiff up and down the stairs, often straining their backs in the process.  As if that was not enough, Plaintiff's teenage daughter was laughed at and ridiculed because she would be seen dragging her father up and down the stairwell.  This situation strained the family dynamic, causing caustic arguments and emotional wounds; those wounds are under repair even today.

What also requires treatment is Plaintiff's injured body.  Having to jounce up and down the stairs everyday, banging his hips and legs against the steps, Plaintiff now has chronic pain from the cramps, stiffness, and lack of circulation.  He still needs significant physical therapy.

After enduring seven months of punishment, Plaintiff took his story to television station WFOR 4.  The station found the story compelling enough to broadcast; the building received negative publicity.  Immediately thereafter, the "cost-prohibitive" elevator repairs suddenly became feasible.

On account of these events, under the Federal Fair Housing Act, 42 U.S.C. § 3601, et

seq., and the Florida Fair Housing Act, § 760.20, et seq., the Plaintiff and his family claim damages against SDW for refusing to make reasonable and feasible accommodations for Plaintiff's disability.  Defendant's disregard for Plaintiff rights consigned him to seven humiliating months of pain and suffering.  Plaintiff has asked for one thousand dollars for each time he was degraded to crawl up and down his apartment stairs, totaling $420,000.00.  Plaintiff also claims punitive damages in the equal amount based on SDW's reckless disregard for Plaintiff's disability and his protected rights.

All well-pled, material, factual allegations, such as those delineated above, are deemed admitted by a party in default under Fed. R. Civ. P. 55(a).  *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.").  Defendant SDW is vicariously, and jointly and severally liable for the actions and omissions of its business partner Emerald-Nile Realty and its agents and employees.  *See Dillon v. AFBIC Development Corp.*, 597 F.2d 556, 562 (11th Cir. 1979) (An action based upon the federal anti-discrimination statutes is essentially an action in tort. As the Supreme Court has written in regard to the Fair Housing Act, "(a) damage action under the statute sounds basically in tort the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach". (citing *Curtis v. Loether*, 415 U.S. 189, 195 (1974).)); *see also Meyer v. Holley*, 537 U.S. 280 (2003) ("It is well established that the [Fair Housing] Act provides for vicarious liability.").

Actions under the Fair Housing Act allow for recovery of actual damages, including those

for mental anguish . *HUD v. Blackwell*, 908 F.2d 864, 872-873 (11th Cir. 1990) (Plaintiff may recover damages for "embarrassment, humiliation, and emotional distress."). The Court may infer these damages from the circumstances surrounding situation. *Id*. Furthermore, "[t]hat the amount of damages is incapable of exact measurement does not bar recovery for the harm suffered." *Id*. The statute also expressly authorizes punitive damages and attorney's fees for a prevailing plaintiff. 42 U.S.C. § 3613(c). Punitive damages may be granted here if the defendant exhibited a callous indifference to the federally protected rights of the plaintiff. *See Ferrill v. Parker Group, Inc*. 168 F.3d 468, 476 (11 Cir. 1999) (citing *Smith v. Wade*, 461 U.S. 30, 46-47 (1983)).

Based upon that foregoing facts, I find that Emerald Nile Realty intentionally and maliciously violated the Fair Housing Act by discriminating against Plaintiff and refusing to make reasonable elevator repairs that were financially feasible. 42 U.S.C. §3604(f)(1) (1998) (It is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap."); 42 U.S.C. §3604(f)(3)(B) ("Discrimination" under the FHAA includes "a refusal to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."). That quadriplegics require elevators to ascend and descend stories needs no explanation. Since SDW did not offer Plaintiff a first-story apartment, the elevator repairs were the only means of reasonable accommodation here. Such repairs were also financially feasible considering the swiftness with which Defendant SDW made them after receiving negative publicity. Finally, the fact that building representatives callously ignored Plaintiff's urgency and needed media coverage to comply with the Fair Housing Act

demonstrates a reckless and wanton disregard for the Plaintiff's rights under the law.

Therefore, I grant Plaintiffs' Motion for Default Final Judgment [DE 43] as follows:

(1)     Compensatory damages in the amount of $420,000.00,

(2)     Punitive damages in the amount of $420,000.00,

(3)     Attorney's fees and costs in the amounts of $18,985.00 and $2,349.35,

respectively,

for a **TOTAL JUDGMENT** of **$861,334.35**, for which let execution issue.

**DONE AND ORDERED** in Chambers in Miami, FL this 6th day of November 2007

_____
MARCIA G. COOKE
United States District Judge

Copies Furnished to:
*The Hon. Stephen T. Brown*
*Counsel of record*